IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:24-cv-811

| | | |
|---|---|---|
| MERITAGE HOMES OF THE CAROLINAS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT** |
| MCCONNELL ROAD SOUTH - GSO, LLC, | ) ) ) ) | |
| Defendants. | ) | |

Plaintiff Meritage Homes of the Carolinas, Inc., complaining of Defendant McConnell

Road South – GSO, LLC, hereby alleges and states as follows:

## NATURE OF THE ACTION

1.      This is a civil action for specific performance based on a contract to convey real

property.

## PARTIES AND JURISDICTION

2.      Plaintiff Meritage Homes of the Carolinas, Inc. ("Meritage") is a corporation

organized and existing under and by virtue of the laws of the state of Arizona and has a

Certificate of Authority to conduct business in North Carolina.

3.      Meritage is informed and believes and, thereupon, alleges that Defendant

McConnell Road South – GSO, LLC ("Defendant") is a limited liability company organized and

existing under and by virtue of the laws of the State of North Carolina, with a principal place of

business located at 610 Pembroke Road, #10007, Greensboro, NC 27408.

4.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332. Meritage and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because Defendant resides in this judicial district.

6.      This Court has personal jurisdiction over Defendant pursuant to N.C. Gen. Stat. § 1-75.4.

## FACTS

7.      The allegations in paragraphs 1 through 6 of the Complaint are realleged and incorporated by reference as if fully set forth herein.

8.      On or about March 21, 2022, Defendant and Meritage entered into a Purchase and Sale Agreement and Joint Instructions ("PSA"). A true and accurate copy of the PSA is attached hereto as Exhibit A and incorporated by reference as if fully set forth herein.

9.      In connection with the PSA, McConnell acquired certain real property located in Greensboro, North Carolina, which includes approximately 195.83 acres, identified as a portion of Parcel ID Nos. 108815, 108819 and 108818 and is more specifically described in the PSA (the "Land").

10.     Pursuant to the terms of the PSA, Defendant agreed to subdivide the Land into a residential community in four Phases, with a combined total of approximately seven hundred eighty-five lots ("Lots").

11.     Further, under the PSA, Defendant agreed to sell, transfer, and convey to Meritage the Lots developed on the Land, together with improvements, real property, and intangible property related thereto.

2

12. Meritage agreed to purchase the Lots for a total amount of $61,776,506.00 ("Purchase Price") in accordance with a Closing and Price Escalation Schedule, which sets forth a scheduled closing date for each Phase ("Closing Schedule"). (PSA at § 2, Ex. I).

13. Meritage also agreed to, and did, deposit into Escrow an Initial Deposit of $750,000.00 and an Additional Deposit of $5,427,651.00, for a total of $6,177,65.00 (collectively, the "Deposit"). (Ex. A, § 2.2).

14. Under the terms of the PSA, Meritage and Defendant (the "Parties") agreed that the Deposit would be returned to Meritage through credit against the Purchase Price. (*Id.*).

15. In connection with the PSA, on or about April 7, 2022, Defendant granted a Deed of Trust to Meritage ("Meritage DOT") to secure: (i) Defendant's obligation to return and/or credit to Meritage the Deposit, as set forth under the terms of the PSA; (ii) Defendant's obligation to return, repay or credit funds Meritage advanced or expended to perform certain development obligations with respect to the Land and Lots, as set forth in the PSA; and (iii) any funds Meritage advanced pursuant to an intercreditor agreement executed in connection with the PSA and the Meritage DOT.

16. A true and accurate copy of the Meritage DOT, recorded with the Guilford County Register of Deeds on April 11, 2022, is attached hereto as Exhibit B and incorporated by reference as if set forth fully herein.

17. Defendant agreed to use commercially reasonable efforts to have the Lots for each Phase substantially completed, and in "Finished Lot Condition" (a phrase defined in the PSA) not later than fifteen days prior to the scheduled Closing date for each phase, as set forth in the Closing Schedule. (PSA at §§ 6.1.10, 7.1, Ex. B, Ex. I).

18.     Defendant failed to use commercially reasonable efforts to have Phase 1 Lots substantially complete and in Finished Lot Condition fifteen days prior to the September 15, 2023 Closing Date.

19.     On November 6, 2023, in compliance with the terms of the PSA, Meritage provided Defendant with a written notice of default related to Defendant's failure to cause development of the Phase 1 Lots to be substantially complete by September 15, 2023 and reminded Defendant of the 10-day cure period afforded to Defendant under the PSA.

20.     Defendant neither contested the existence of a default, nor cured the aforementioned default under the terms of the PSA.

21.     As of a date not later than November 20, 2023, Defendant was in default of its obligations under the PSA.  Defendant remains in default of its obligations under the PSA.

22.     Defendant failed to use commercially reasonable efforts to have Phase 2 Lots substantially complete and in Finished Lot Condition fifteen days prior to the March 15, 2024 Closing Date.

23.     No portion of the Land now satisfies the Finished Lot Condition.

24.     The PSA provides Meritage with certain remedies for a default by Defendant, including the right to proceed with an action against Defendant for specific performance. (Ex. A at § 12.1).

25.     Specifically, in the PSA the Parties agreed that, if at the time Meritage seeks specific performance, all of the Lots do not satisfy the Finished Lot Condition, Meritage is entitled to an order that compels Defendant to sell the Property to Meritage.  The PSA defines "Property" as including the Lots developed on the Land together with "Improvements," the balance of the "Real Property," and the "Intangible Property" related thereto.

4

a. As used in the PSA:

the term "**Real Property**" shall mean, collectively, all of Seller's right, title, and interest in and to: (a) all of the Lots approved for development on the Land pursuant to the Governmental Approvals; (b) all buildings, structures, and improvements thereto or thereon, if any (the "**Improvements**"); and (c) all of the rights, privileges, appurtenances, hereditaments, easements, reversions, and remainders pertaining to or used in connection with the Lots, and/or any of the Improvements (if any), including, without limitation, all (i) development rights, water capacity, sewer, wastewater and reuse water rights, sewage treatment capacity, other utility capacity, rights, and approvals, and permits relating to the Lots, (ii) strips and gores, streets, alleys, easements, rights-of-way, public ways, or other rights appurtenant, adjacent, or connected to any of the Lots, and (iii) minerals, oil, gas, and other hydrocarbon substances in, under, or that may be produced from the Lots.

b. As used in the PSA:

the term "**Intangible Property**" shall mean all of Seller's right, title, and interest in and to that certain intangible property owned by Seller or used by Seller exclusively in connection with the development of the Lots and any related Real Property, if any, including, without limitation, all of Seller's right, title, and interest, if any, in and to: (a) all plats, improvement plans, drawings and specifications, including any CAD files, and development rights and credits relating to the Real Property, (b) all books, records, reports, test results, environmental assessments, if any, as-built plans, specifications, and other similar documents and materials relating to the use, operation, maintenance, repair, construction, or fabrication of all or any portion of the Real Property; (c) the nonexclusive right to use any trademarks and trade names associated with the Community; (d) all transferable business licenses, architectural, site, landscaping or other permits, applications, approvals, authorizations, pre-paid fees, and other entitlements specifically relating to the Real Property; and I all transferable guarantees, warranties, and utility contracts relating to all or any portion of the Real Property.

26.     Further, the PSA provides that, in obtaining the aforementioned specific performance, the Purchase Price for any portion of the Property that does not fully satisfy the Finished Lot Condition shall be reduced by (i): the total amount of estimated costs to complete development of the Lots to satisfy the Finished Lot Condition; (ii) the total amount of costs and expenses, including attorney's fees, that Meritage incurs in enforcing its rights under the PSA;

5

and (iii) any sums advanced by Meritage in accordance with the intercreditor agreement. Meritage will also be entitled to a credit against the Purchase Price in an amount equal to the Deposit.

27.     Defendant is in default under the terms of the PSA and, as a result thereof, Meritage is entitled to specific performance.

28.     Accordingly, Meritage is entitled to an order from the Court ordering Defendant to sell, transfer and convey to Meritage the Property, including, in the absence of any Lot that satisfies the Finished Lot Condition, all of the Land.

29.     Meritage is entitled to purchase the Property, for a Purchase Price of $61,776,506.00, reduced by (a) the estimated costs to develop the Lots to satisfy the Finished Lot Condition, which amount will be proven at trial, (b) Meritage's costs and expenses incurred in enforcing the PSA in this action, and (c) a credit for the Deposit.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract / Specific Performance)

30.     The allegations in paragraphs 1 through 27 of the Complaint are realleged and incorporated by reference as if fully set forth herein.

31.     The PSA is a valid and enforceable contract between the Parties.

32.     Meritage has performed its obligations under the PSA, and is ready, willing, and able to perform any remaining obligations under the PSA, including by closing on the Property under the terms of the PSA.

33.     Defendant has the ability and power to perform its obligations under the PSA but has chosen not to perform its obligations under the PSA.

34.     Defendant has materially breached the PSA by failing to substantially complete the Phase 1 Lots under the terms of the PSA.

6

35.     Specific performance is an appropriate remedy because the PSA expressly provides Meritage with a remedy for specific performance, the PSA is a contract to convey land, and there is no other adequate remedy at law.

36.     Accordingly, Meritage is entitled to a judgment directing Defendant to specifically perform its obligations under the Contract and to sell, transfer, and convey the Property to Meritage for the Purchase Price of $61,776,506.00, reduced by (a) the estimated costs to develop the Lots to satisfy the Finished Lot Condition, which amount will be proven at trial, (b) Meritage's costs and expenses incurred in enforcing the PSA in this action, and (c) a credit for the Deposit.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Meritage Homes of the Carolinas, Inc. prays to the Court as follows:

1.     That the Court enter an Order directing Defendant McConnell to specifically perform its obligations under the PSA and to sell, transfer, and to convey to Meritage the Property, including, in the absence of any Lot that satisfies the Finished Lot Condition, all of the Land, to Meritage in accordance with the terms of the PSA;

2.     That Meritage have and recover its attorney's fees from Defendant, to the full extent allowed under law;

3.     That Meritage be awarded pre-judgment and post-judgment interest to the full extent allowed under the law;

4.     That the costs of this action be taxed against Defendant McConnell; and

5.     For such other and further relief as the Court deems just and proper.

7

This, the 27th day of September, 2024.

MAYNARD NEXSEN PC

 /s/ Michelle C. Prendergast
Brooks F. Bossong
N.C. State Bar No. 19823
bbossong@maynarnexsen.com
Michelle C. Prendergast
N.C. State Bar No. 52352
mprendergast@maynardnexsen.com
701 Green Valley Road, Suite 100
Post Office Box 3463
Greensboro, NC 27402
Phone: (336) 373-1600
Fax: (336) 273-5357
*Attorneys for Plaintiff*

8